Filed 4/27/15  Cottage Park Place v. State Dept.of Public Health CA3

<u>NOT</u> <u>TO</u> <u>BE</u> PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| COTTAGE PARK PLACE, LP, | C072323 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2011-00095103-CU-MC-GDS) |
| v. | |
| STATE DEPARTMENT OF PUBLIC HEALTH, | |
| Defendant and Respondent. | |

A nursing assistant failed to adequately supervise an elderly resident of a nursing facility owned by plaintiff Cottage Park Place, LP, which resulted in the fall and subsequent death of the resident.  Cited by defendant State Department of Public Health (the Department) for violation of a federal regulation requiring adequate supervision of residents, Cottage Park Place challenged the citation in court.  The trial court entered judgment in favor of the Department, and Cottage Park Place appeals.

1

On appeal, Cottage Park Place contends: (1) our role is to review the trial court's ruling de novo, (2) Cottage Park Place is not responsible for the nursing assistant's inadequate supervision, and (3) various interpretive federal authorities establish that Cottage Park Place is not responsible for the nursing assistant's inadequate supervision.

We conclude: (1) Cottage Park Place's contention that our role is to review the trial court's ruling de novo is without merit because Cottage Park Place ignores the trial court's credibility determination as to the nursing assistant, (2) Cottage Park Place is responsible for the nursing assistant's inadequate supervision of the resident under the rule of nondelegable duties, and (3) Cottage Park Place's reliance on interpretive federal authorities is forfeited because those authorities were not brought to the attention of the trial court.

## BACKGROUND

The Long-Term Care, Health, Safety, and Security Act of 1973 (Health & Saf. Code, § 1417 et seq.) allows the Department to cite a long-term health facility for violations of state or federal laws or regulations relating to those facilities. (Health & Saf. Code, § 1423.) The most serious violation – a Class AA violation – occurs when the violation is "a direct proximate cause of death of a patient or resident of a long-term health care facility." (Health & Saf. Code, § 1424, subd. (c).)

Cottage Park Place operates Gramercy Court, a long-term skilled nursing facility, where resident Mary Anne Holden was injured on October 12, 2007, and later died of her injuries.

The Department issued a Class AA citation and assessed a civil money penalty of $90,000 against Cottage Park Place for violation of 42 Code of Federal Regulations part 483.25, subdivision (h)(2), which provides: "[T]he facility must ensure that [¶] . . . [t]he resident environment remains as free of accident hazards as is possible; and [¶] . . . [e]ach resident receives adequate supervision and assistance devices to prevent accidents."

2

Specifically, the Department cited Cottage Park Place for not providing "adequate supervision" to Holden on the morning of October 12, 2007.

Cottage Park Place contested the citation in the superior court, which contest was tried by the court under Health and Safety Code section 1428. After trial, the court, on Cottage Park Place's request, issued a statement of decision.

Cottage Park Place claims on appeal that we must review the superior court's interpretation of the relevant laws de novo, implying that the facts were not in dispute. That claim, however, is problematic because Cottage Park Place does not accept the facts as found by the trial court. We therefore recount the relevant parts of the statement of decision.

The court noted that there was no dispute that Cottage Park Place provided (1) a facility as free of accident hazards as possible and (2) assistance devices. Therefore, the court focused on "whether the facility's nursing staff provided [Holden] adequate supervision during the relevant morning hours of October 12, 2007."

Concerning its view of the facts, the trial court wrote:

"[Holden] was a 97-year[-]old woman who resided at Gramercy Court from January 31, 2007, until October 12, 2007 . . . . [Citations.] Her admitting diagnoses included a history of recent stroke and dementia. The medical records for [Holden] disclosed that she required extensive assistance in ambulation, transfer, personal hygiene, locomotion and bed mobility; in fact, she had been transferred with one-person-assistance from her admission until the date of her fall. The testimony of witnesses for both parties confirmed that [Holden] required extensive assistance with bed mobility and was totally dependent on staff for transfers, dressing and personal hygiene. Her well-documented debilities include being basically comatose, a state that was confirmed by the testimony of [Holden's] son. The testimony of both parties also agreed that [Holden] moved very little and, when she did move, did so very slowly.

"[Cottage Park Place] offered uncontroverted evidence at trial that [Holden] had no history of falls in [Gramercy Court] prior to October 12, 2007, was under her ideal body weight at 100.6 pounds, had previously been transferred with one-person-assistance without any falls for over eight months prior to her fall, and that her Certified Nurse Assistant [CNA 1] had taken care of [her] prior to [] her fall. In any event, the Court finds that [Cottage Park Place's] evidence of the care of [Holden] prior to the fall on October 12, 2007, is not determinative of whether the nursing staff failed to supervise her adequately in the morning hours of October 12.

"According to her testimony and her unverified statement, [citation], CNA 1 was the only caregiver in [Holden's] room on October 12, 2007. CNA 1 testified that [Holden] was in the middle of her bed, lying on her back, with her (contracted) legs bent over her, when CNA 1 turned for 'a split second' to check on either the position or the brakes of the wheelchair. CNA 1 testified that the time during which her attention to the wheelchair was diverted was 'no more than two seconds.' CNA 1 further testified that, during those two seconds, [Holden] rolled from the middle of the bed to the edge of the bed and fell to the floor while CNA 1 was standing to the side of the bed, approximately seven inches away from the mattress. CNA 1 testified that when she returned her attention to the patient, [Holden] was falling to the floor. She stated that, as [Holden] fell, her feet or legs brushed the front [of] CNA 1's legs."

"CNA 1 had cared for [Holden] on a continuous basis, and [Cottage Park Place] had verified her training, competence and orientation. [The Department] produced no evidence that CNA 1 had ever dropped any other resident while [the resident was] under her care. Further, from the record, the Court had no reason to believe that [Cottage Park Place] had other than a good history of compliance with the Department's regulations governing skilled nursing facilities."

4

Holden was transported to Sutter Memorial Hospital, where it was determined that she had spinal fractures and that she was not a candidate for surgery. She was not given nutrition or liquids and died four days later.

Concerning the credibility of CNA 1, the trial court wrote:

"The Court finds that CNA 1's testimony of the events on October 12, 2007, is inconsistent with any physically-known maneuver that [Holden] would have been able to accomplish in order to put her into a position to fall over the edge of the bed. The Court finds incredible, and therefore unreliable, the testimony of CNA 1 as to the events during the fall on October 12, 2007. According to the undisputed description of [Holden's] position in the bed, and her inability to move without assistance, the Court determines that the only explanation for her fall on October 12, 2007, is the inadequate supervision of CNA 1."

The trial court found that the evidence was sufficient to sustain the citation based on inadequate supervision. However, the court reduced the civil money penalty to $80,000 because the Department's investigation of the incident was not sufficiently thorough and took too long. Neither party challenges the reduction of the civil money penalty on appeal.

DISCUSSION

I

*Preliminary Matters*

Cottage Park Place contends that the only "issue presented" on appeal is "whether the trial court erred in its interpretation of what constitutes 'adequate supervision' under 42 Code of Federal Regulations part 483.25(h)(2)." (Unnecessary capitalization omitted.) In support of this contention, Cottage Park Place recounts the facts, including the testimony of CNA 1. However, as noted above, the contention that the only issue on appeal is the interpretation of the regulation is problematic because the trial court found the testimony of CNA 1 unreliable. Cottage Park Place fails even to mention in its

5

opening brief this finding by the trial court, but instead relies on the testimony as if it reflected the true state of the facts.

This deficiency in the opening brief presents a problem for Cottage Park Place. Since the brief relies on a state of facts not found by the trial court, the arguments of Cottage Park Place concerning how the law should be applied to the facts is inherently flawed. We cannot take the arguments at face value because of this flaw.

Cottage Park Place's argument about the trial court's interpretation of the "inadequate supervision" language under the facts of this case is based on the false premise that the facts are as stated in the opening brief. For that reason, without more, the argument is without merit, and the trial court's judgment must be affirmed. In any event, even considering Cottage Park Place's additional arguments in light of the facts as found by the trial court, those arguments are without merit.

II

*Nondelegable Duty*

We also must clarify the law relating to "inadequate supervision." Does it require the licensee (here, Cottage Park Place) simply to adequately supervise the nursing assistant? Or does it hold Cottage Park Place responsible for the nursing assistant's failure to adequately supervise the resident? We conclude, consistent with the rule of nondelegable duties under California law, that Cottage Park Place is citable for the nursing assistant's failure to adequately supervise the resident.

Health and Safety Code section 1424, subdivision (c) provides a reasonable licensee defense: "If the state department meets [its] burden of proof [that a Class AA violation occurred], the licensee shall have the burden of proving that the licensee did what might reasonably be expected of a long-term health care facility licensee, acting under similar circumstances, to comply with the regulation. If the licensee sustains this burden, then the citation shall be dismissed."

6

This reasonable licensee defense, however, must be interpreted consistent with "the well-established rule of nondelegable duties of licensees." (*California Assn. of Health Facilities v. Department of Health Services* (1997) 16 Cal.4th 284, 295 (*CAFH*).) "The rule, akin to the rule of respondeat superior in tort law, is that ' " '[t]he licensee, if he elects to operate his business through employees[,] must be responsible to the licensing authority for their conduct in the exercise of his license . . . .' By virtue of the ownership of a . . . license such owner has a responsibility to see to it that the license is not used in violation of law." ' [Citation.] . . . 'The settled rule that licensees can be held liable for the acts of their employees comports with the general law governing principal-agent liability. "An agent represents his principal for all purposes within the scope of his actual or ostensible authority . . . ." ' [Citation.]" (*Ibid.*, fn. omitted.)

Cottage Park Place argues that, even applying the rule of nondelegable duties, it provided adequate supervision for Holden and therefore did not violate 42 Code of Federal Regulations part 483.25(h)(2). It reasons that it "acted through its employees because they performed the assessments of [Holden], they provided care for the months prior to [Holden's] fall and performed this transfer numerous times before without any incident." The Department does not dispute these facts. However, Cottage Park Place continues: "[CNA 1] was providing the one-person assistance in line with the assessments and was in close proximity to the resident to provide the assistance for transfer." This is where the parties' arguments diverge and where the argument of Cottage Park Place is based on the false premise that CNA 1's testimony was credible. Cottage Park Place's argument fails because the trial court found that Holden's fall did not take place as testified to by CNA 1; instead, it occurred because she was not providing adequate supervision.

Under California law, including the Long-Term Care, Health, Safety, and Security Act of 1973 and the rule of nondelegable duties as endorsed by the California Supreme Court in *CAHF*, the citation against Cottage Park Place was properly sustained.

7

III

*Interpretive Federal Authorities*

In the trial court, Cottage Park Place argued that the citation should be dismissed based on California's reasonable licensee defense. The court found that defense inapplicable because CNA 1 did not adequately supervise Holden. On appeal, Cottage Park Place attempts to change its theory, arguing that, under interpretive federal authorities, there was no violation of the federal regulation. We reject this challenge because it was not made in the trial court. As Cottage Park Place notes in its request for judicial notice of the interpretive federal authorities on appeal, those authorities were not presented to the trial court, nor were they argued.[1]

Cottage Park Place's reliance on federal law interpreting 42 Code of Federal Regulations part 483.25(h)(2) on appeal after it failed to refer the trial court to those interpretive federal authorities is similar to making a belated appeal to constitutional standards after having failed to raise those constitutional standards in the trial court. It results in forfeiture of the issue: "Constitutional claims raised for the first time on appeal are not subject to forfeiture only when 'the new arguments do not invoke facts or legal standards different from those the trial court itself was asked to apply, but merely assert that the trial court's act or omission, insofar as wrong for the reasons actually presented

---

[1] On appeal, Cottage Park Place requests judicial notice of various federal judicial and administrative decisions and federal regulations under California Rules of Court, rule 8.252(a) and Evidence Code section 452, subdivisions (c) and (d), which provides for permissive judicial notice of federal actions and records. The request for judicial notice states that Cottage Park Place did not present these documents to the trial court. Nevertheless, Cottage Park Place requests this court to take judicial notice because, in its words, "[t]he conclusion of the trial court of a violation of [42 Code of Federal Regulations part] 483.25(h)(2) appears to be in conflict with existing federal law."

We deny the request for judicial notice because these documents were not presented to the trial court for its consideration. (Evid. Code, § 459, subd. (a).)

8

to that court, had the additional legal consequence of violating the Constitution.' [Citations.]"  (*People v. Tully* (2012) 54 Cal.4th 952, 979-980.)

Cottage Park Place's argument on appeal is that the interpretive federal authorities require us to apply a different standard to our interpretation of 42 Code of Federal Regulations part 483.25(h)(2) than what is applied under state law – that is, that the rule of nondelegable duties does not apply under federal law.  Specifically, Cottage Park Place argues that *CAHF* is irrelevant to the facts of this case because the federal standard is different from the state standard.  To allow this tactic of changing the playing field on appeal would discourage full litigation of the relevant standards in the trial court and would constitute a waste of precious judicial resources.  Also, on the facts of this case, it would be unfair to the Department for us to review the facts presented by the Department in the trial court by applying precedents and standards that were not argued in the trial court.   If the interpretive federal authorities had been argued, the Department may have presented its case differently.  (See *In re Josue S.* (1999) 72 Cal.App.4th 168, 170-171 [allowing new arguments on appeal waste of judicial resources and unfair to trial court and opposing party].)

We therefore conclude that Cottage Park Place has forfeited reliance on interpretive federal authorities on appeal because it did not bring those authorities to the attention of the trial court.  As a result, we do not reach the arguments made by Cottage Park Place based on those federal authorities and do not express an opinion concerning their application.

DISPOSITION

The judgment is affirmed.  The Department is awarded its costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)


                                       _____NICHOLSON_____, Acting P. J.


We concur:


_____DUARTE_____, J.


_____HOCH_____, J.